GLENN WEATHERBY, Appellant, v. OWEN G. JACKSON, Superintendent of Insurance of the State of Missouri; RICHARD R. NACY, State Treasurer of the State of Missouri; and FORREST SMITH, State Auditor of the State of Missouri, Respondents.

FLOYD E. JACOBS and GRACE L. HENDERSON, Administratrix De Bonis Non of the Estate of MITCHELL J. HENDERSON, Deceased, Appellants, v. OWEN G. JACKSON, Superintendent of Insurance of the State of Missouri; RICHARD R. NACY, State Treasurer of the State of Missouri, and FORREST SMITH, State Auditor of the State of Missouri, Respondents.

JOHN T. BARKER, Appellant, v. OWEN G. JACKSON, Superintendent of Insurance of the State of Missouri; RICHARD R. NACY, State Treasurer of the State of Missouri, and FORREST SMITH, State Auditor of the State of Missouri, Respondents.—Nos. 40814, 40815 and 40877.—215 S. W. (2d) 742.

Division Two, December 13, 1948.

*Ben W. Swofford, Robert L. Jackson, John H. Hendren* and *Henry P. Andrae* for appellant Glenn Weatherby.

*Swofford, Jackson & Shanklin, Hendren & Andrae, Charles M. Howell, Jr.,* and *Dean Wood* for appellants Floyd E. Jacobs and Grace L. Henderson, Administratrix De Bonis Non of Estate of Mitchell J. Henderson.

546

*Clif Langsdale, Hendren & Andrae* and *Clyde Taylor* for appellant John T. Barker.

J. E. Taylor, Attorney General, *George W. Crowley* and *Harry H. Kay,* Assistant Attorneys General, for respondents; *Ralph C. Lashly* of counsel.

[742] WESTHUES, C.—These are actions in equity wherein each of the appellants, Weatherby, Barker and Jacobs, sought to have the Circuit Court of Cole County, Missouri, allow reasonable attorney fees for services rendered to the Superintendent of Insurance and

impress a lien upon a certain fund now in the hands of the State Treasurer. The court dismissed the petitions and plaintiffs appealed.

In the petitions plaintiffs claimed the reasonable value of the services to be 5% of the total fund collected in certain insurance cases, making the fee in each case in excess of $130,000. The three cases were consolidated and argued together in this court because the issues were identical.

These same claims have been before this court on former occasions. See Aetna Ins. Co. v. O'Malley, 343 Mo. 1232, 124 S. W. (2d) 1164, where this court en banc reversed a judgment of the Circuit Court of Cole County, Missouri, allowing appellant Weatherby $137,000 and Barker and Jacobs [743] a total of $275,000. The trial court in that case had ordered the fees allowed to be paid out of the same fund against which the parties now seek to have the court declare a lien for their attorney fees. For a full statement and history of the case see the opinion in the Aetna case, supra. Appellants do not ask us to overrule the opinion in the Aetna case but rely upon an act of the legislature by which the fund in question was escheated to the state. See Sec. 5985a, Laws 1941, page 397.

We will make a very brief statement of the facts. In November, 1922, the Insurance Superintendent ordered a 10% reduction in the insurance rates. Many fire insurance companies contested the legality of the order. Pending the final outcome of the case the insurance companies collected the full rate. After the case was finally decided the companies were ordered to repay the policyholders the excess premiums collected. The companies, in compliance with the order, repaid to the policyholders approximately $11,000,000. It was found, however, that many who were entitled to payments out of the fund could not be located. A judgment was entered in the Circuit Court of Cole County ordering the companies to pay the balance, with interest, into the custody of the court for the benefit of the policyholders. This judgment was based on a motion filed by the attorneys who are the plaintiffs in the present action. They were employed by the Superintendent of Insurance with the approval of the Governor. The amount paid into the custody of the court by the insurance companies was approximately $2,750,000. It was in connection with this restitution proceeding that the claims for legal services now before this court originated. While the fund was in the custody of the Circuit Court of Cole County further payments were made to policyholders.

It was held in the Aetna case, supra, that the Superintendent of Insurance had authority to employ attorneys for the purpose of representing him in rate litigation. It was further held that the compensation of the attorneys could only be paid by an appropriation made by the legislature. See Aetna Ins. Co. v. O'Malley, supra, 124

S. W. (2d) 1164, l. c. 1168, where this court en banc, in the concluding portion of the opinion, said:

"The trial court being without authority to interfere with the insurance code of this state, it follows that it erred in allowing the respondents fees from the impounded fund. As above stated, Section 5678, supra, does give the superintendent of insurance, with the approval of the governor, authority to employ attorneys to enforce the insurance laws of this state, yet the only way such attorneys can be paid is like any other expense of the insurance department, that is, by an appropriation of the legislature." . . . . "So, in the case at bar, the respondents must look to the legislature for the payment of their fees."

The same conclusion was reached by this court in Lucas v. Lamb, 348 Mo. 900, 156 S. W. (2d) 634, l. c. 637, 638 (9), where this court said:

"The record shows that respondent rendered diligent and valuable services, and incurred expense; that his efforts contributed to the collection of a much larger sum for the benefit of the policyholders, or of the State, than might otherwise have been recovered. However, for the reasons stated, we are unable to permit him to retain compensation out of the fund collected. If, as contended by respondent, the State shall become the ultimate beneficiary of a part of this fund, the question of respondents' reimbursement may be addressed to the General Assembly."

See also State ex rel. Lucas v. Blair, 346 Mo. 1017, 144 S. W. (2d) 106, l. c. 109 (6-8). It may also be noted that the legislature has recognized its authority to compensate attorneys employed by the Superintendent of Insurance in these rate cases. It appropriated the sum of $150,000 to Mr. Barker and Mr. Jacobs for representing the Superintendent of Insurance in the 10% reduction litigation case which originated in 1922 and in which case the present case had its origin. See Laws 1931, page 69, Sec. 11. We understand that the Governor ordered the amount appropriated reduced to $100,000. The Aetna case, supra, was decided by this court in September, 1938. Motions for rehearing and to modify were overruled and the decision became [744] final on April 4, 1939. The case of State ex rel. Lucas v. Blair, supra, was decided in September, 1940, and became final November 9, 1940. Lucas v. Lamb, supra, was decided July 8, 1941, and became final December 12, 1941. The act of the legislature relied on by appellants was enacted in the year 1941 and was approved on July 30 of that year. It will be noted that the first two cases mentioned were decided before the 1941 legislature convened. Those two cases definitely held that the circuit court had no authority to allow appellants' claims and that the only way their claims could be paid was by an appropriation of the legislature. It will be noted that this

court in Lucas v. Lamb, supra, 156 S. W. (2d) 634, l. c. 637 (9), anticipated that the fund in question would ultimately go to the state. The court there said:

"If, as contended by respondent, the State shall become the ultimate beneficiary of a part of this fund, the question of respondent's reimbursement may be addressed to the General Assembly."

That was written after the legislature had enacted the escheat statute, Sec. 5985a, supra.

Let us now examine the escheat statute and see if there is any expression which can be construed to mean that the circuit court was given authority to allow the attorney fees claimed and to order them paid out of this fund. After providing that the fund shall escheat to the state, the section contains a proviso, relied on by appellants, which reads as follows:

". . . *provided, however*, that within five years after such money has been paid into the State Treasury, any person or corporation who appears and claims the same may file his petition in the Circuit Court of Cole County, Missouri, stating the nature of his claim and praying that such money be paid to him, a copy of which petition shall be served upon the Superintendent of Insurance who shall file an answer to the same. The Court shall proceed to examine said claim and the allegations and proof, and if it find that such person is entitled to any money so paid into the State Treasury, it shall order the State Auditor to issue his warrant on the State Treasurer for the amount of said claim, but without interest or costs."

Appellants say the above proviso authorized the Circuit Court of Cole County to take jurisdiction of these claims, allow a reasonable fee and declare the allowance as a lien against the escheat fund. The reading of the statute does not justify such an interpretation. Note the proviso says, ". . . that within five years . . . any person or corporation who appears and claims the same . . ." The question is, claims what? The answer must be, claims the money that was escheated to the state. This fund, as has often been stated in the various opinions, belongs to the policyholders. The legislature, by the above section, simply allowed anyone who had not been repaid his money to make claim therefor within five years. This view is supported by what follows. The section provides that if the circuit court should find: ". . . that such person is entitled to any money so paid into the State Treasury," a warrant shall be drawn ". . . for the amount of said claim, but without interest or costs." Suppose numerous claims had been filed and the superintendent had employed an attorney to represent him in such litigation for the purpose of protesting the fund, could the court, by virtue of the statute, have allowed such attorney a reasonable fee for representing the superintendent? We think not. The legislature, it seems to us, was

careful to protect the fund against any claims except those of persons and corporations to whom the money actually belonged; furthermore, that the cost of litigation establishing these claims should not be assessed against the fund.

We therefore hold that the only authority given to the circuit court by the section in question is authority to determine whether the fund, or any part thereof, belongs to any person or corporation making claim therefor. The word "claim," as used in the statute, was evidently used in such a restricted sense. Certainly, in view of the decisions of this court in the various cases, holding that the claimants in the present cases must look to the legislature for payment of their claims, and further, that the Circuit Court of Cole County has no jurisdiction to allow them, the legislature, had it intended to vest the court with such jurisdiction, [745] would have said so in plain and unmistakable language. Furthermore, there is no apparent reason why the legislature would vest the circuit court with such authority. The legislature in the past has appropriated money to pay attorneys and there is no reason why it cannot do so again if it deems the claims meritorious. Whether they are, or are not, we have no authority to say in this case.

We must again, as we have before, say to these plaintiffs, your claims must be presented to the legislature for consideration. The judgment of the trial court in each case is therefore affirmed. *Bohling* and *Barrett, CC.,* concur.

PER CURIAM:—The foregoing opinion by WESTHUES, C., is adopted as the opinion of the court. *Ellison, J.,* and *Tipton, P. J.,* concur; *Leedy, J.,* absent.