STATE ex rel. Leonard A. LYONS and Anna B. Lyons, and Anna B. Lyons as the Sole Surviving Member of the Last Board of Directors of Bismarck Grill, Inc., Now Defunct, Appellants,

v.

MARYLAND CASUALTY COMPANY, a Corporation, J. A. Purdome, Cornelius Costello, and Earl H. Cooke, Respondents.

No. 44271.

Supreme Court of Missouri.

Division No. 1.

April 11, 1955.

Motion for Rehearing or to Transfer to Court en Banc Denied May 9, 1955.

Walter A. Raymond, Lillie Knight, Kansas City, and Robert L. Spurrier, Butler, for appellants.

Sheppard, Belisle & Sheppard, Butler, Paul G. Koontz, Kansas City, for respondent Maryland Casualty Co.

Howell, Jacobs & Howell, Dean Wood, Kansas City, for other respondents.

HOLMAN, Commissioner.

Action by plaintiffs (appellants) to recover damages in the sum of $14,400 upon the official bond of defendant, J. A. Purdome, former sheriff of Jackson County, Missouri, and his surety, Maryland Casualty Company (respondents). Upon a trial to the court, a judgment was entered for plaintiffs in the sum of $1. Plaintiffs sought a new trial upon the issue of damages only and upon their motion for such being overruled, they have appealed.

This case grows out of litigation which has already been before this court upon three occasions. A complete history of the factual background upon which the instant case is based may be obtained by a reading of those cases. DeMayo v. Lyons, 358 Mo. 646, 216 S.W.2d 436; DeMayo v. Lyons, 360 Mo. 512, 228 S.W.2d 691; DeMayo v. Lyons, Mo., 243 S.W.2d 967.

This being a jury-waived law action, the statute requires that we review the case upon both the law and the evidence as in suits of an equitable nature and "the judgment shall not be set aside unless clearly erroneous." Section 510.310 RSMo 1949, V.A.M.S.; Beckemeier v. Baessler, Mo., 270 S.W.2d 782.

In January, 1944, Frank DeMayo and Leonard A. Lyons agreed to avail themselves of a special offer of the American Distilling Company and purchase a quantity of whiskey. They bought 1,440 cases of Special Privilege brand at $28 per case and 180 cases of Prerogative brand at $42 per case. To finance the transaction, DeMayo advanced $16,101.33 and the balance required was borrowed by Lyons from the Commerce Trust Company upon the security of certain real estate and the warehouse receipts for the whiskey. The Bismarck Grill (of which Lyons owned 98 per cent of the stock) was to sell the liquor and the profits were to be divided equally between DeMayo and Lyons.

Lyons sold a considerable quantity of the whiskey and DeMayo filed the original suit for an accounting. In due time, the referee reported his findings of fact and conclusions of law. He found that Lyons had sold enough whiskey to pay the indebtedness to the trust company and had in his hands a profit of $11,805.52, and there remained in the warehouse 853 cases of the whiskey. He recommended that DeMayo be granted a judgment against Lyons in the sum of $22,004.09, being the amount advanced by DeMayo plus one-half of the accumulated profit. He found that DeMayo and Lyons were the joint and equal owners of the remaining liquor. It was the further recommendation of the referee that DeMayo's judgment be a lien upon all of the remaining whiskey and that all of said whiskey be sold "accordingly as the court may order and direct," and after payment of costs the proceeds be applied to the payment of the aforesaid judgment and the remainder, if any, be paid to Lyons.

The circuit court, on November 13, 1947, adopted the report of the referee in its

entirety and specified that it "finds that the plaintiff, Frank DeMayo, and the defendant, Leonard A. Lyons, are the joint, sole and exclusive owners of the warehouse receipts in question here; and that they are the joint, sole and exclusive owners of the 698 cases of the Privilege brand of whiskey, and the 155 cases of the Prerogative brand of whiskey, covered thereby; and further finds that the defendant, Leonard A. Lyons, is now justly indebted to the plaintiff, Frank DeMayo, in the sum of $22,004.09, and that the plaintiff, Frank De-Mayo, is now entitled to a general judgment against the defendant, Leonard A. Lyons, in the aforesaid sum of $22,004.09; and that such general judgment in the aforesaid sum is hereby declared to be, and to constitute, a first, just, valid, subsisting and equitable lien upon the aforesaid warehouse receipts, and the aforesaid whiskey covered thereby." Other than adopting the report of the referee, the decree made no reference to a sale of the liquor.

Lyons appealed from the decree but failed to give a supersedeas bond so that there was no stay of execution upon the judgment in DeMayo's favor. On January 13, 1948, an execution was issued upon said judgment and delivered to Sheriff Purdome. DeMayo, on January 17, filed a motion which recited that the sheriff had levied upon the one-half interest of Lyons in the afore-mentioned whiskey and prayed for an order directing the Commerce Trust Company to deliver the warehouse receipts covering same to the sheriff. A few days later, the court sustained this motion and made the order requested. At the direction of the sheriff, the warehouse company, on February 11, 1948, issued a receipt to De-Mayo for one-half of the liquor and delivered it to his attorney. This was all withdrawn from the warehouse by DeMayo during March, 1948. The receipt for the other one-half was issued in the name of Lyons and delivered to the sheriff.

On April 22, 1948, the sheriff sold the whiskey stored in the name of Lyons at execution sale and it was purchased by DeMayo for $13,000.

After the execution was issued and prior to the sale, there were a number of discussions in the office of the sheriff as to the meaning and effect of the judgment and decree in the accounting case. DeMayo's attorney contended that only Lyons' half of the whiskey should be sold, and the attorney for Lyons argued that it should all be sold and the proceeds applied on the judgment. It is evident that the sheriff was advised by his attorney to levy upon and sell only one-half thereof and this was the course he followed. On April 19, 1948, the attorneys for Lyons filed a motion to quash the execution and levy for the reason that the sheriff had only levied upon one-half of the whiskey when under the judgment, as they contended, he should levy upon and sell all of it. This motion was overruled on the day of the sale.

Upon the appeal in the accounting case, this court reversed the judgment for the reason that the contract between DeMayo and Lyons to sell liquor without a license was illegal and the court would not help DeMayo enforce an illegal contract. De-Mayo v. Lyons, 358 Mo. 646, 216 S.W.2d 436.

Thereafter Lyons filed a motion in the trial court for a judgment of restitution for the value of the liquor. The court denied the motion stating that since the contract was illegal neither party was entitled to any relief. Upon appeal, this court held that Lyons was entitled to a judgment of restitution. It was stated in that opinion that such a judgment would not be a recovery upon the illegal contract, but a restoration to Lyons of the value of property taken from him under an erroneous judgment of the trial court. DeMayo v. Lyons, 360 Mo. 512, 228 S.W.2d 691. In accordance with this mandate, the trial court rendered a judgment of restitution for Lyons against the estate of DeMayo in the sum of $36,986.19. The executors of the DeMayo estate appealed from that judgment but the appeal was held to be without merit and was dismissed. DeMayo v. Lyons, Mo., 243 S.W.2d 967.

It is obvious that Lyons, the principal plaintiff in the instant case, does not and indeed could not complain of the action of the defendant sheriff in levying upon and selling one-half of the liquor as no bond had been given to stay such action. Plaintiffs contend that, under the judgment, it was the duty of defendant sheriff to sell all of the liquor and that he had no right or authority to deliver one-half of it to DeMayo. Specifically, plaintiffs assert that the act of the sheriff in delivering this whiskey to DeMayo was a conversion thereof and hence he is liable upon his official bond for its value on the date of said delivery, February 11, 1948.

■ In reviewing the acts of the sheriff we must remember that since no appeal bond was given it was his duty to proceed under the provisions of the judgment, and of the execution issued thereunder, and his situation is in no manner affected by the fact that the said judgment was thereafter reversed by this court.

Plaintiffs take the position that since the trial court entered a judgment for them the issue of the liability of defendants is settled and we need only review the error of the trial court in not allowing adequate damages. This position is not tenable. The trial court was not requested to make specific findings and did not do so. However, if the court had found the sheriff guilty of a conversion of the whiskey it would certainly have allowed more than nominal damages because, under any view of the evidence, this whiskey was worth several thousand dollars. It is evident that the trial court was of the opinion that the sheriff was guilty of a technical breach of duty but that Lyons had not suffered any actual damages as a result thereof.

■ We have concluded that the judgment of the trial court was correct. While the report of the referee and the judgment adopting same is not entirely clear, it is our view that it was the duty of the sheriff thereunder, upon receipt of the execution, to levy upon and sell all

of the whiskey. Since he did not do so he was guilty of a breach of his official duty and is liable to the plaintiffs for at least nominal damages. Plaintiffs are not entitled to a substantial judgment, however, unless it appears that they suffered appreciable damage and injury as a result of the dereliction of the defendant sheriff. State ex rel. Ginger v. Palmer, Mo., 198 S.W.2d 10; State ex rel. Armour Packing Co. v. Dickmann, 146 Mo.App. 396, 124 S.W. 29; State ex rel. Rice v. Harrington, 28 Mo. App. 287.

■ Our study of this transcript and the related cases leads us to the conclusion that the plaintiffs did not sustain any damage by reason of the failure of the sheriff to sell all of the whiskey. The sheriff sold one-half of the whiskey at execution sale for $13,000. It is fair to assume that had he sold all of it the amount received would not have exceeded $26,000. Under the provisions of the report of the referee (judgment) the proceeds received from the sale of the liquor, after paying all costs, was required to be applied to the payment of the DeMayo judgment and the remainder, if any, paid to Lyons. Upon the date of the sale it would have required $26,099.09 to pay the costs and satisfy the DeMayo judgment. It therefore becomes apparent that had the sheriff sold all of the whiskey, as plaintiffs contend he should have done, there would have been no remainder to pay over to Lyons.

After the judgment was reversed, was there any difference in the situation Lyons was in under the facts as they actually occurred and under the assumption that the sheriff had sold all of the liquor? We think not. In accordance with the mandate of this court he recovered a judgment against the estate of DeMayo, upon his motion for restitution, in the sum of $36,986.-19. This represented the fair market value of all of the whiskey. Lyons could not have recovered any more if the sheriff had sold the other half of the liquor at execution sale rather than delivering it to De-Mayo as his rightful property.

Since it appears that the plaintiffs sustained no actual damages, it follows that the judgment of the trial court was proper and should be affirmed. It is so ordered.

VAN OSDOL and COIL, CC., concur.

PER CURIAM.

The foregoing opinion by HOLMAN, C., is adopted as the opinion of the court.

All concur.